

RECEIVED
JAN 28 2019
TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA
BY_____

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

CLINTON STRANGE,

Plaintiff

5:19-cv-0105

Case No. 5:19-CV-_____-____-____

v.

ETHOS DATA MANAGEMENT, INC.;

a Florida Profit Corporation

JAMES MCMANUS;

individually, and in his role as

President of Ethos Data Management, Inc.

&

COLBY GALUSKA,

individually, and in his role as a

Director for/of Ethos Data Management, Inc.

Defendants

CIVIL ACTION:

FOR WILLFUL AND KNOWING VIOLATIONS OF:

THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

&

THE LOUISIANA UNFAIR TRADE PRACTICES AND

CONSUMER PROTECTION LAW

1

**Jury Trial Demand**

### PRELIMINARY STATEMENT:

   This is an action brought in good faith by an adult individual against Defendants ETHOS DATA MANAGEMENT, INC., herein "EDM", JAMES MCMANUS, individually, and in his role as President of Ethos Data Management, Inc., and COLBY GALUSKA individually, and in his role as a Director for Ethos Data Management, Inc., for willful and knowing violations of parts of the Telephone Consumer Protection Act of 1991; and violations of statutes under the laws of the State of Louisiana:

47 U.S. Code § 227(b)(1)(A)(iii)

47 U.S. Code § 227(c)(5)

&

LOUISIANA REVISED STATUTE 51: §1401 to §1420

   The Plaintiff brings this private civil action to enforce the provisions of these laws in his own response, as a responsible citizen of both the State of Louisiana and the United States of America, to the overwhelming wide-spread public outrage about the proliferation of intrusive, disturbing, and absolutely annoying, nuisance telemarketing practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). The Plaintiff is seeking a maximum award for damages, and an enjoinder from further violations of the parts herein.

### JURISDICTION AND VENUE:

**Jurisdiction** lies properly in this court because the TCPA portion of the action involves a Federal Question pursuant to:

47 U.S. Code § 227(g)(2)

28 U.S. Code § 1331

,and the State of Louisiana Law Claims were born out of the conduct under Federal Jurisdiction:

28 U.S. Code § 1367(a)

**Venue** lies proper in this U.S. District Court pursuant to:

47 U.S. Code § 227(g)(4)

&

28 U.S. Code § 1391

## PARTIES:

**Plaintiff**, CLINTON STRANGE, is an adult individual residing at the address of:

CLINTON STRANGE

7021 WINBURN DRIVE

GREENWOOD, LA 71033


**Defendant** ETHOS DATA MANAGEMENT, INC. is a Florida Profit Corporation, and according to the State of Florida Division of Corporations, has a principal address of:

9272 GREEN MEADOWS WAY

SUITE C

PALM BEACH GARDENS, FL 33418

&

Whose Registered Agent is listed as:

MOHAMED MAKKE

9272 GREEN MEADOWS WAY

SUITE C

PALM BEACH GARDENS, FL 33418

**Defendant** JAMES MCMANUS is named individually, and in his role as President of Ethos Data Management, Inc.

**Defendant** COLBY GALUSKA is a "Billing Director" and is named individually, and in his role as a Director for Ethos Data Management, Inc.

**Factual Allegations:**

1. The Telephone Consumer Protection Act of 1991 "TCPA" states in part under subsection b:

   (b) Restrictions on use of automated telephone equipment(1) Prohibitions: It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice-

   (i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);

   (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

   (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

2. The Telephone Consumer Protection Act of 1991 states in part under subsection c (5):

   (5) Private right of action: A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State.

3. On December 19, 2018 at 9:51am CST the Plaintiff answered a call that was placed to his cellular telephone number 318-423-5057 from phone number 352-347-8787 [See Exhibit A].

4. When Plaintiff answered the call referenced in paragraph 3 a pre-recorded voice "played", and the message was in reference to his "Google Business Listing" the message warned him that it was "at risk of not being seen", and that if the Plaintiff wished to be "connected to an Authorized Google Agent press 1", or if Plaintiff wanted to be placed on the "Do-Not-Call List press 2 now". The Plaintiff pressed 2 on his keypad and the call disconnected.

5. On December 19, 2018 at 11:23am CST the Plaintiff answered a call that was placed to his cellular telephone number 318-423-5057 from phone number 203-855-7880 [See Exhibit B].

6. When Plaintiff answered the call referenced in paragraph 5 a pre-recorded voice "played", and the message was in reference to his "Google Business Listing" the message warned him that it was "at risk of not being seen", and that if the Plaintiff wished to be "connected to an Authorized Google Agent press 1", or if Plaintiff wanted to be placed on the "Do-Not-Call List press 2 now". The Plaintiff pressed 1 on his keypad and the call was connected to an agent who introduced himself as Alex.

7. Alex asked the Plaintiff a series of questions, and then launched into a canned scripted spill regarding the services that EDM offers making numerous references to products and services that are trademarks / trademark products of Google LLC.

8. At some point during the telephone conversation when Plaintiff began to press the agent for identifying information about the company that was making the calls, Alex

transferred the call to what he (Alex) claimed was a "Lead Technician" named Colby Galuska. Plaintiff was "warmly handed-off" to Colby Galuska.

9. When the Plaintiff asked for more identifying information about the entity that was calling, Colby Galuska sent an email to the Plaintiff on December 19,2018 at 11:37am CST. The email contained no direct reference to Defendant EDM but notably and disconcertingly was largely comprised of trademarked Google LLC content [See Exhibit C].

10. When the Plaintiff pressed Colby Galuska further, after reviewing the email referenced in paragraph 9, for information about the identity of the entity that was calling him he told the Plaintiff that the website for the entity he "worked for" was ethosdatamanagement.com.

11. Plaintiff then asked that he, Colby Galuska, add him to the Do-Not-Call list. He cannot remember the exact words he used, but the request was "to that effect".

12. The email that Colby Galuska sent to the Plaintiff, referenced in paragraph 9, listed Colby Galuska as a Billing Director, and did not mention Defendant EDM in any way. To the reckoning of the Plaintiff, and certainly to an unwary, least sophisticated, or vulnerable consumer this email could have been, and likely was intended to convey, that the conversation he had, and the correspondence he received was from agents and/or employees of Google LLC.

13. Colby Galuska, although not listed in the Articles of Incorporation for Defendant EDM, is technically an "officer or director of a Corporation" under the law. Colby Galuska has a Social Media presence on websites such as FaceBook.com, and

postings and profiles (viewable to the public) on those websites that further substantiate that Colby Galuska is a Director for Defendant EDM [See Exhibit D].

14. Although Defendant Colby Galuska, through verbal and electronically transmitted (written) statements, identified and represented himself as having affiliation with Google LLC; he has no more affiliation than does that of the Plaintiff who utilizes a Gmail account. Colby Galuska is not affiliated with or in any way authorized by Google LLC to promote its products, goods, or services. Google LLC certainly does not employ or contract Defendant Colby Galuska as a "Billing Director", agent, or pseudo-employee by any means for any of its ongoing business operations.

15. ETHOS DATA MANAGEMENT, INC. is a Florida Profit Corporation that was created on or was "effective" January 1, 2018, and James McManus is the President of the Corporation. The Document Number of the Florida Division of Corporations filing is P17000094210 [See Exhibit E].

16. Under the TCPA, individuals such as Defendants James McManus and Colby Galuska may be held personally liable for TCPA violations under 47 U.S.C. § 227, which provides that "the act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user as well as of that person." Id. (emphasis added). See also *Jackson Five Star Catering, Inc. v. Beason*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ([M]any courts have held that corporate actors can be individually liable for violating the TCPA "where they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.); *Maryland v.*

*Universal Elections*, 787 F. Supp.2d 408, 415-16 (D. Md. 2011) (If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."). Also applicable to this argument is also *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 1333472 at *3 (N.D. Ohio Mar. 28, 2014).

17. An individual "resides" "in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1). A corporation "resides" "in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, [then the corporation resides] in the district within which it has the most significant contacts." *Id.* § 1391(d) (alteration supplied).

18. Plaintiff has solely resided in the Western District of Louisiana since about 2004.

19. Defendant EDM offers its goods and services (via unsolicited telemarketing) and engages in "contracts, agreements, and/or mises" with unsuspecting and vulnerable small business owners within the State of Louisiana. The Western District of Louisiana comprises two-thirds of the entire state. Any entity conducting a targeted campaign of robocalls in the State of Louisiana could reasonably expect to be subject to the exclusive personal jurisdiction of the Western District of Louisiana [See Exhibit F].

20. The Plaintiff annoyed and aggravated by unwanted robocalls registered his cellular telephone number on the United States Federal Trade Commission's Do-Not-Call Registry on January 3, 2018, and later Registered his cellular telephone number on the

State of Louisiana Public Service Commission's Do-Not-Call Registry on August 2,2018 [See Exhibit G].

21. The phone numbers that the Defendant EDM employed in their campaign of illegal robocalls to the Plaintiff's cellular telephone used a "spoofing" tool and /or other technologically deceptive means to conceal the true geographical location from which the calls were really originating. The phone call as referenced in paragraph 3 for example would make it appear as though the call originated from Marion County, FL, and the phone call referenced in paragraph 5 would make it appear as though the call originated from around Norwalk, CT.

22. The Plaintiff knows that the illegal robocalls calls made to the Plaintiff's cellular telephone was "transmitted" using technology capable of generating thousands of similar calls per day. The calls were generated from what is called an Automatic Telephone Dialing System, or "ATDS".

23. The calls that Plaintiff answered (as referenced in ¶ 3 and ¶ 5) were also made or initiated using a technology known as "predictive dialers". The Plaintiff knows this because on many occasions inclusive of the second phone call he received from Defendants on that day the "machine on the other end of the call" after receiving the Plaintiff's keypad response of 1 to connect him to an Authorized Google Agent he heard a tone that was akin to a coin hitting the surface of water in a wishing well...like a "booip"...but an electronic sound and three or four seconds later he was connected to Defendant EDM's agent named Alex.

24. Some U.S. District Courts outside of the Fifth U.S. Circuit order that damages be awarded for TCPA violations to be both stacked and trebled particularly when the

conduct is egregious as in this instant case before this U.S. District Court as for example, in *Charvat v. NMP, LLC.*, No. 10-3390 (6th Cir. 2011).

25. Plaintiff has received LOTS of similar unwanted robocalls regarding his non-existent and imaginary "Google Business Listing" from robocallers and boiler-room call centers acting under the same *modus operandi* as the Defendant herein. The Plaintiff by the circumstances can concretely and sufficiently allege that all the calls he received outside of the well documented calls referenced in ¶ 3 and ¶ 5, were made by the Defendants, and given the number of calls the Plaintiff is able to connect to, and document by evidence in his possession that were in regard to the Defendants' fake Google LLC sales robocalls that were illegally placed to Plaintiff's cellphone are listed as follows:

a- February 26,2018 at 8:06am CST from 337-509-1196
b- March 14,2018 at 9:35am CST from 318-217-3291
c- August 7,2018 at 9:25am CST from 318-217-1001
d- August 8,2018 at 9:39am CST from 318-666-0660
e- August 14,2018 at 2:38pm CST from 318-217-1001
f- December 4,2018 at 4:03pm CST from 225-663-8056
g- December 6,2018 at 4:25pm CST from 225-663-8054
h- December 7,2018 at 10:02am CST from 225-663-8056
i- December 10,2018 at 10:42am CST from 225-663-8054
j- December 12,2018 at 1:00pm CST from 225-663-8056
k- December 27,2018 at 9:42am CST from 225-663-8056

    l- December 27,2018 at 2:26pm CST from 225-663-8054

    m- January 3,2019 at 9:43am CST from 225-478-6887

    n- January 3,2019 at 2:17pm CST from 318-423-6943

    o- January 4,2019 at 11:47am CST from 225-478-7405

    p- January 7,2019 at 2:41pm CST from 225-478-6887

    q- January 8,2019 at 3:45pm CST from 225-478-6887

    r- January 15,2019 at 9:05am CST from 318-498-5245

    s- January 16,2019 at 9:10am CST from 225-749-1881

    t- January 17,2019 at 09:35am CST from 225-800-0919

    u- January 17, 2019 at 11:49am CST from 318-217-2450

    v- *June 14,2018 at 1:47pm CST (based on transcript from Exhibit H]

The Plaintiff compiled Screenshots of calls (listed in this paragraph as a-u) from Plaintiff's cellphone's call history [See Exhibit I ].

26. The Plaintiff as a result of and as a direct and proximate cause of all these Google Business Listing Robocalls on January 17,2019 became somewhat angry and frustrated, and felt so violated by these fake and scammy Google Business Listing Robocalls that he decided the best way to end them was to bring an action against the Defendants seeking both damages and injunctive relief from a U.S. District Court.

27. On January 17,2019 at 1:38pm CST the Plaintiff called back to one of the alleged Defendant's phone numbers 318-498-5245, that had called him recently regarding his non-existent and imaginary "Google Business Listing", in order to request an address where to send a legal demand / cease and desist request/ Do Not Call Request, and the agent who Plaintiff was connected to started "going through the same scammy sales

pitch/ spill" and so forth almost word-for-word as that of the EDM agent Alex, referenced in paragraph 5, and identified the agent who answered identified the company as Business Direct, and then later as "IBL". The duration of the call was 12 minutes 33 seconds. The Plaintiff recorded and later transcribed the phone call [See Exhibit H].

28. The "Floor Manager" for "Business Direct/IBL" that the Plaintiff spoke to in the recorded and transcribed conversation referenced in paragraph 27 referred to a conversation that Plaintiff had in December. Plaintiff only recalls speaking with Alex, and Colby Galuska regarding fake Google Business Listing Scams during the entire month of December.

29. It is reasonable to assume based on the statements made in paragraphs 27, and 28 together along with the transcription offered as Exhibit G that all of the illegal robocalls referenced in paragraph 25 regarding Google business listings were made by agents or employees of Defendant EDM.

30. Following the January 17,2019 telephone conversations with the Defendants as referenced in paragraph 27 it is important to note that Plaintiff has for the time being stopped receiving fake Google business listing robocalls. This is further indication that all the calls received as referenced in Paragraph 25 were made from/ or on behalf the Defendant herein.

31. Plaintiff is the sole user of the cellular telephone number 318-423-5057 and is the only person responsible for paying on this Verizon wireless account. The Plaintiff has personally been paying on this account in his name since about July,2016. The

Plaintiff alleges that he incurs charges for calls as that issue has been defined by other U.S. District Courts.

32. None of the Defendants named in this action have ever had the Plaintiff's prior express written consent to call the Plaintiff either via Live-Voice calls, or via calls placed via or utilizing an ATDS or pre-recorded voice.

33. The Defendants have no prior Established Business Relationship with the Plaintiff.

34. The calls placed to Plaintiff's cellular telephone were not made for an emergency purpose.

35. Technical and procedural standards specific to automated calls are included in § 227(d) and accompanying regulation 47 C.F.R. § 64.1200(b), which do not provide a private right of action or a statutory-damages provision. They can be however alleged as to the conduct of a Defendant in establishing a pattern of violative behavior worthy of treble damages.

36. Recovery of damages for the two separate provisions does not upset Congress's balance in setting damages "'fair to both the consumer and the telemarketer.'" See *GVN Mich.*, 561 F.3d at 632 n.8 (quoting 137 Cong. Rec. S16,204, S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).

37. The U.S. District Court for The Western District of Louisiana is under the Fifth U.S. Circuit Court of Appeals. The Fifth Circuit and the Sixth Circuit are "sister circuits". In certain cases, the Courts in one District Court will look to other court rulings in how best to rule on a matter. Such cases come up from time to time a decisions are reached, and courts will cite which circuit courts are their "sister courts". In one case for example the court ruled as thus…"Our sister circuits have differed on this issue.

Plaintiff alleges that he incurs charges for calls as that issue has been defined by other U.S. District Courts.

32. None of the Defendants named in this action have ever had the Plaintiff's prior express written consent to call the Plaintiff either via Live-Voice calls, or via calls placed via or utilizing an ATDS or pre-recorded voice.

33. The Defendants have no prior Established Business Relationship with the Plaintiff.

34. The calls placed to Plaintiff's cellular telephone were not made for an emergency purpose.

35. Technical and procedural standards specific to automated calls are included in § 227(d) and accompanying regulation 47 C.F.R. § 64.1200(b), which do not provide a private right of action or a statutory-damages provision. They can be however alleged as to the conduct of a Defendant in establishing a pattern of violative behavior worthy of treble damages.

36. Recovery of damages for the two separate provisions does not upset Congress's balance in setting damages "'fair to both the consumer and the telemarketer.'" See *GVN Mich.*, 561 F.3d at 632 n.8 (quoting 137 Cong. Rec. S16,204, S16,205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings)).

37. The U.S. District Court for The Western District of Louisiana is under the Fifth U.S. Circuit Court of Appeals. The Fifth Circuit and the Sixth Circuit are "sister circuits". In certain cases, the Courts in one District Court will look to other court rulings in how best to rule on a matter. Such cases come up from time to time a decisions are reached, and courts will cite which circuit courts are their "sister courts". In one case for example the court ruled as thus…"Our sister circuits have differed on this issue.

While some have said that the burden of proving withdrawal always rests on the defendant,[citing the Second, Fifth, Sixth, Tenth and Eleventh Circuits],others have held that, once the defendant meets his burden of production that he has withdrawn prior to the relevant limitations period, the burden of persuasion shifts to the government [citing The First,Third,Fourth,Seventh and Ninth Circuits]… Quoting from *United States v. Moore*, 651 F.3d 30,90 (D.C. Cir. 2011)(per curiam)(holding "that the defendant bore the burden of persuasion to show that he withdrew from the conspiracy outside of the statute of limitations period"),aff'd,133 S.Ct. 714 (2013).

38. The calls made to Plaintiff's cellular telephone that concealed the geographic location from which the calls originated violated disparate parts of the Truth In Caller ID Act as amended to the Telephone Consumer Protection Act.
39. The Plaintiff was the "called party" in the targeted campaign of illegal robocalls placed to Plaintiff's cellular telephone number by the Defendant.
40. As referenced in paragraphs number 3 and 5 the Plaintiff has received and can document way beyond a reasonable doubt that he has received 2 or more phone calls within a 12-month period in violation of subsection (c)(5) of The Telephone Consumer Protection Act of 1991.
41. Plaintiff does not like to receive unwanted commercially solicitous phone calls on his cellphone because they "intrude on his seclusion and violate his rights to privacy guaranteed under the U.S. Constitution", and further deplete plaintiff's memory storage capacity, deplete Plaintiff's battery level on his cellphone (amounting to a conversion Tort under Louisiana State Laws), and require him to use a measurable amount of both mental and physical energy to walk to his phone and answer the calls.

Plaintiff alleges that he has Article III standing as a result of Defendant's alleged conduct.

42. Google LLC has adopted a policy about how to best address the issue of rampant Robocalls that are made using their products as bait for least sophisticated, or vulnerable small business owners. They sue them for Trademark or copyright infringement, and rightly so because their image, brand, and reputation is harmed. Moreover, the Plaintiff believes that these miscreants like the Defendants herein unjustly enrich themselves at the expense of a well-known company by peddling for $399 what Google LLC gives away for free (if one invests a little bit of time to engage the free technology).

43. Google LLC says that these Robocalls are scams, and they will sue those who participate in and conduct activities like that of which the Defendants engage in [See Exhibit J].

44. Plaintiff is not alone in his allegations pertaining to the conduct of the Defendants herein. Others have complained about the behavior and conduct of the Defendants on both Social Media Platforms such as Facebook, and to the Better Business Bureau (BBB) [See Exhibit K].

45. Plaintiff is a statutorily defined "disabled" person. He subsists on a small monthly VA disability benefit.

46. Plaintiff knows that the Defendants were trying to trick him out of what little money he has in order to pretend like they were offering him a lot of services from a company they do not even have an affiliation with, and certainly do not represent.

47. Louisiana Revised Statute 51: §1402(9) describes the definition of a disabled person in relation to the statute.

48. Louisiana Revised Statute 51: §1409(A) provides for a private right of action for "persons who have suffered an ascertainable loss…corporeal damages may be…awarded treble damages".

49. The Plaintiff was harmed and suffered damages due to the willful and knowingly unlawful conduct of the Defendants herein under Louisiana Law by violating parts of the Louisiana Unfair Trade Practices and Consumer Protection Law.

50. In the event of Default, the Plaintiff should be granted injunctive relief under the Louisiana Unfair Trade Practices and Consumer Protection Law in the form of a court order enjoining Defendants from future violations of these parts.

51. In the event of Default, the Plaintiff, based on the overwhelming *prima facie* evidence against the Defendants should be awarded the maximum amount of Trebled and Stacked Statutory Damages under the Telephone Consumer Protection Act of 1991 in the amount of $72,000.00. Plaintiff calculates this figure based on 24 documented phone calls initiated to his cellular telephone number in violation of both subsections b, and c of the TCPA equaling 48 willful and knowing, and intentional violations of the TCPA.

52. Defendant EDM was and has been liable to the Plaintiff for damages under the Telephone Consumer Protection Act. The Court should calculate and appropriately award Plaintiff both pre and post judgement interest on the judgement awarded by the Court from the date that the Court determines the Defendants were first liable to the Plaintiff for damages.

53. At all times pertinent hereto Defendants were acting by and through their agents, servants and / or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

54. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/ or employees was intentional, reckless, and in grossly negligent disregard for Federal Laws and the rights of the Plaintiff herein.

## THE COUNTS:

### COUNT I:

**(Plaintiff v. All Defendants)**

**WILLFULL AND KNOWING VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991**

**47 U.S. Code § 227(b)(1)(A)(iii)**

55.. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

56. At all times pertinent hereto the Defendants were liable to the Plaintiff for violations of:

The Telephone Consumer Protection Act 47 U.S.C. § 227(b)(1)(a)

Which makes Defendants liable to Plaintiff for at least 24 violations as evidenced in the complaint and Plaintiff seeks between $500 and $1,500 in damages for said violations at the discretion of the court.

## COUNT II:

### (Plaintiff v. All Defendants)

### WILLFULL AND KNOWING VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

### 47 U.S. Code § 227(c)(5)

57. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

58. At all times pertinent hereto the Defendants were liable to the Plaintiff for violations of:

> Telephone Consumer Protection Act 47 U.S.C. § 227(c)(5)

Which makes Defendants liable to Plaintiff for at least 24 violations as evidenced in the complaint and Plaintiff seeks between $500 and $1,500 in damages for said violations at the discretion of the court.

**Jury Trial Demand;**

Plaintiff demands trial by jury on all issues so triable.

**Prayer for Relief;**

WHEREFORE, Plaintiff seeks judgement in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

Statutory Damages;
Treble Damages;
Stacked Damages;
Pre and Post Judgement Interest;
Enjoinder from further violations of these parts;
Costs of litigating the action together along with all reasonable attorney's fees (if any) and court costs;
And such other and further relief as may be necessary, just and proper.

Respectfully Submitted,

X _____     1-28-2019
Clinton Strange
Pro Se                                    Dated
7021 Winburn Drive
Greenwood, LA 71033
318-423-5057
parsmllc@gmail.com